IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ASOCIACIÓN DE EMPRESARIOS CALLE LOÍZA, INC. ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>MUNICIPALITY OF SAN JUAN,<br><br>Defendant. | CIV. NO. 23-1541 (SCC) |

**OPINION AND ORDER**

Before the Court is Defendant Municipality of San Juan's Motion to Dismiss. *See* Docket No. 10. For the reasons below, the Court **GRANTS** the Motion to Dismiss at Docket No. 10 and **DISMISSES** the Complaint without prejudice.

## I. BACKGROUND

Plaintiffs Asociación de Empresarios Calle Loíza, Inc.; Asociación de Comerciantes del Viejo San Juan, Inc.; Asociación Comerciantes de la Placita de Santurce, LLC; 2 Monkeys Entertainment, LLC; Homar Torres; Sanse 157, LLC; RMO Corporation; KEG Entertainment, LLC; Miguel Morales; 365 Entertainment, Inc.; PANA MJC, LLC; Harry Entertainment Music, Inc.; SX The Club Corporation; ONISM

Management Group, LLC; KK Group, LLC; and Bulon Group, Inc. (collectively "Plaintiffs") operate businesses located in the Municipality of San Juan that dispense alcoholic beverages. *See* Docket No. 1, para. 21.

On August 8, 2023, the Municipality of San Juan ("Defendant" or "Municipality") enacted Municipal Ordinance No. 3, Series 2023-2024 ("the Ordinance"). *See* Docket No. 1, para. 22. Article 2.101 of the Ordinance prohibits the sale and distribution of alcoholic beverages between 1:00 am and 6:00 am on weekdays and between 2:00 am and 6:00 am on Saturdays, Sundays, and holiday Mondays. *See* Docket No. 10-1, pg. 21 (Article 2.101.- Hours of Sale or Dispensing of Alcoholic Beverages). An exemption permits restaurants and bars located within hotels to serve alcohol to their guests without time restrictions. *See* Docket No. 10-1, pg. 21. The Ordinance defines guests as "only those individuals who have registered at a hotel and have been assigned rooms." *See* Docket No. 10-1, pg. 16 (Article 1.106(20)).

The Ordinance clearly communicates its objectives. Its Preamble states that it "contemplates modifications to the

regulations regarding the sale and dispensing of alcoholic beverages, establishing an accurate and uniform legal framework in the search for a balance between nighttime commercial activity and tranquility in residential areas." Docket No. 10-1, pg. 8. The Preamble further emphasizes that "[i]t is urgent for the Municipality to have a nightlife that contributes to the economy, but that does not unreasonably alter the quality of life of the people of San Juan and all those who visit us." Docket No. 10-1, pg. 8. The Ordinance's stated purpose reiterates that its provisions aim to "contribut[e] to a better quality of life and public coexistence, maintain[] decorum, cleanliness, order, and promot[e] the health, safety, and tranquility of . . . [San Juan] residents, merchants, and visitors." Docket No. 10-1, pg. 10 (Article 1.103.-Purpose).

Plaintiffs filed a Section 1983[1] claim against Defendant just before the Ordinance took effect. *See* Docket No. 1, para. 1. Plaintiffs argue that Article 2.101 violates their Fourteenth Amendment rights to equal protection and substantive due process by prohibiting alcohol sales by non-hotel

---

[1] *See* 42 U.S.C. § 1983.

establishments during certain hours.[2] *See* Docket No. 1, paras. 49–53; Docket No. 19, pg. 10. Before the Ordinance took effect on November 9, 2023, Plaintiffs' businesses operated past 1:00 am on weekdays and after 2:00 am on Saturdays, Sundays, and holiday Mondays. *See* Docket No. 1, paras. 21, 40. Plaintiffs seek declaratory and injunctive relief as well as attorney's fees and costs. *See* Docket No. 1, pg. 13.

Plaintiffs allege that the Ordinance constitutes a "knee jerk" reaction to public outcry following the May 6, 2023, murder of two Peruvian tourists. *See* Docket No. 1, paras. 27–30. Plaintiffs further allege that these murders remain unsolved. *See* Docket No. 1, para. 29. The Municipality issued the Ordinance, according to Plaintiffs, to "make it look like they are doing something about a perceived spike in criminal activity during the late night/early morning hours," despite indications that its restrictions would not mitigate crime. Docket No. 1, paras. 30–32. Plaintiffs contend that an independent study commissioned by the Municipality concluded that closing businesses early would not reduce

---

[2] Plaintiffs clarify in their Response that they do not bring a procedural due process claim. *See* Docket No. 19, pg. 10.

| Asociación de Empresarios Calle Loíza, Inc. et al. v. Municipality of San Juan | Page 5 |
|---|---:|

crime in San Juan since most murders and violent acts occur during the day. *See* Docket No. 1, paras. 31–32. Following that unfavorable projection, Plaintiffs state that the Municipality pivoted to claim Article 2.101 protects businesses' neighbors from late-night noise instead of crime. *See* Docket No. 1, para. 33.

Plaintiffs further allege that the Municipality opted to impose Article 2.101 instead of deploying other tools at its disposal to fine and shut down nuisance businesses. *See* Docket No. 1, para. 35. This choice, Plaintiffs claim, costs the Municipality and the Commonwealth of Puerto Rico millions in lost tax revenue. *See* Docket No. 1, para. 36.

Plaintiffs further claim that municipal officials have publicly stated that the police and Permits Office will not visit hotels to ensure they only serve guests after 1:00 or 2:00 am. *See* Docket No. 1, para. 38. Plaintiffs allege that Article 2.101's exception for hotels serving guests imposes location-based disparities on businesses and impacts Plaintiffs' bottom line. *See* Docket No. 1, paras. 39–42.

After filing suit, Plaintiffs immediately moved for a preliminary injunction to prevent the Ordinance from taking

effect. *See* Docket No. 2. The Court denied their request. *See* Docket No. 18. Defendant moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Docket No. 10. Plaintiffs opposed. *See* Docket No. 19. Defendant replied, and Plaintiffs filed a Surreply. *See* Docket Nos. 23, 27.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) lies at the heart of a Rule 12(b)(6) motion. Rule 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, when considering a Rule 12(b)(6) motion, the Court must determine whether a plaintiff's complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To make that determination, the Court embarks on a two-step analysis. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). This analysis is context-specific and relies on the Court's "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

First, while the Court is called to accept a plaintiff's well-pleaded allegations as true, that mandate is not limitless.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not constitute well-pleaded allegations under the Rule 12(b)(6) framework. *Id.* at 678. Therefore, the Court must identify and disregard conclusory factual allegations because it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal citations and quotations omitted).

Second, the Court examines whether the factual allegations—devoid of legal conclusions—allow "the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That is, in order to survive a Rule 12(b)(6) motion, a plaintiff must have set forth allegations that "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III. Analysis

Plaintiffs mount substantive due process and equal protection challenges to Article 2.101 on grounds that the Ordinance fails to accomplish its stated purposes and exempts establishments located inside hotels. *See* Docket No. 1, paras. 32, 39, 49–53. Neither of Plaintiffs' Fourteenth Amendment arguments holds water.

The Fourteenth Amendment provides, in relevant part, that no State may "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Otherwise stated, due process guarantees certain rights to all, while equal protection mandates enjoyment of certain rights by all.

A substantive due process analysis asks whether sufficient justification exists to deprive someone of rights "'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'" *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 231 (2022) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). Those rights filter into two categories: (1) rights guaranteed by the Bill of Rights incorporated and thereby made applicable to the States through the Fourteenth Amendment's Due Process Clause and (2) certain fundamental rights implicitly protected by the Constitution. *See id.* at 237; *Glucksberg*, 521 U.S. at 720 (collecting cases recognizing various fundamental rights). If the law challenged burdens the exercise of an incorporated or fundamental right, strict scrutiny applies. *See Loving v.*

*Virginia*, 388 U.S. 1, 12 (1967) (applying strict scrutiny where fundamental right to marry was implicated). Otherwise, rational basis review applies. *See Glucksberg*, 521 U.S. at 728–35 (applying rational basis review where no fundamental rights were burdened).

In contrast, an equal protection analysis asks whether a law unjustifiably ascribes different treatment to similarly situated groups. *See Harron v. Town of Franklin*, 660 F.3d 531, 537 (1st Cir. 2011); *Cotter v. City of Bos.*, 323 F.3d 160, 168 (1st Cir. 2003) ("The [Equal Protection] Clause does not mandate that every citizen be treated identically, rather, it requires an adequate explanation for treating groups differently."). The level of judicial scrutiny hinges on whether the law discriminates based on suspect classifications or discriminatorily burdens the exercise of fundamental rights. If so, heightened scrutiny applies. *See Loving*, 388 U.S. at 11 (racial classifications trigger strict scrutiny); *Reynolds v. Sims*, 377 U.S. 533, 562, 568, 581 (1964) (laws implicating fundamental voting rights trigger heightened scrutiny). Otherwise, courts apply rational basis review. *See Ry. Exp. Agency v. People of State of N.Y.*, 336 U.S. 106, 109–10 (1949)

(underinclusive ban on advertising vehicles subject to rational basis review).

So while substantive due process and equal protection analyses address conceptually distinct Fourteenth Amendment challenges, they proceed along functionally similar paths. *See Obergefell v. Hodges*, 576 U.S. 644, 672 (2015). Both require courts to ascertain and apply the appropriate level of judicial scrutiny to determine whether legislation offends the Fourteenth Amendment. This in mind, the Court takes up Plaintiffs' challenges in turn.

### A. Substantive Due Process

Plaintiffs undermine their substantive due process argument in two critical ways. First, Plaintiffs clarify that they only take issue with Article 2.101 because it does not apply to all alcohol-sales establishments alike. *See* Docket No. 19, pg. 10; Docket No. 27, pg. 3. Because Plaintiffs concede their issue is not with the constitutionality of the law's restrictions but instead their allegedly discriminatory application, their constitutional challenge boils down to equal protection only.

Second, ignoring that concession, Plaintiffs fail to identify any enumerated or fundamental right burdened by

Article 2.101.[3] Absent violation of a fundamental right, rational basis review, not heightened scrutiny, applies. *See Dobbs*, 597 U.S. at 300. As discussed *infra*, Article 2.101's restrictions are rationally related to legitimate government objectives. Accordingly, Plaintiffs fail to state a substantive due process claim.

### B. Equal Protection

Defendant challenges Plaintiffs' equal protection claim on two fronts. First, it argues Plaintiffs' establishments are not similarly situated to hotel-based establishments, as evinced

---

[3] To the extent Plaintiffs argue Article 2.101 burdens a fundamental right to make a living or violates a property interest in future alcohol sales, *see* Docket No. 1, para. 42, they present no authority, and the Court knows of none, supporting that proposition, *see, e.g.*, *Medeiros v. Vincent*, 431 F.3d 25, 32 & n.3 (1st Cir. 2005) (citing *New York State Trawlers Ass'n v. Jorling*, 16 F.3d 1303, 1309–12 (2d Cir. 1994)) ("The right to 'make a living' is not a 'fundamental right,' for either equal protection or substantive due process purposes."); *New York State Trawlers*, 16 F.3d at 1309–12 (no fundamental rights or property interest burdened by amended lobster trawling regulations). Plaintiffs also mention in passing that Article 2.101 burdens First Amendment rights to peaceful assembly. *See* Docket No. 1, para. 42. Plaintiffs, who are mostly business entities and not natural persons, never allege that Article 2.101 prevents them from gathering with their family and friends. Likely because Article 2.101 contains no such prohibition. Nor does it ban frequenting or operating businesses at night. Whether the natural-person Plaintiffs now forego gathering at bars at 3:00 am because they cannot purchase alcoholic beverages is a matter of personal choice, not constitutional import.

| | |
|---|---|
| ASOCIACIÓN DE EMPRESARIOS CALLE LOÍZA, INC. ET AL. V. MUNICIPALITY OF SAN JUAN | Page 12 |

by the distinct regulatory scheme governing hotels. *See* Docket No. 10, pg. 15. In the alternative, Defendant contends that the Ordinance's stated purposes provide a rational basis for Article 2.101's classifications. *See* Docket No. 10, pgs. 16–18.

Plaintiffs respond that hotel bars and restaurants are often owned by third parties, not the hotel in which they are located, creating an arbitrary, location-based distinction that prejudices their bottom lines. *See* Docket No. 19, pgs. 6–7. Plaintiffs further argue that Defendant has more effective alternatives at its disposal, like policing and noise regulations, that would not injure Plaintiffs' businesses. *See* Docket No. 1, para. 43; Docket No. 19, pg. 8. Finally, Plaintiffs advocate, without argument or citations, for strict scrutiny review and argue that even "a more lenient" standard would prove fatal to Article 2.101.[4] *See* Docket No. 19, pg. 5.

---

[4] Plaintiffs further argue that "the Ordinance . . . discriminate[s] against Puerto Ricans[,] who . . . [are] prohibited from consuming alcohol, while citizens from outside the Island can freely consume alcohol at a [hotel] bar until the wee hours of the morning." Docket No. 19, pg. 9. This, Plaintiffs contend, "creates a suspect class of citizens that are being discriminated [against] simply because of where they reside." Docket No. 19, pg. 9. Multiple issues plague this argument. First, Plaintiffs do not demonstrate

Assuming, *arguendo*, that Plaintiffs' businesses are similarly situated to hotel-based establishments, the Court begins by determining what level of scrutiny Article 2.101's classifications merit. Location-based classifications are not inherently suspect, and Plaintiffs fail to identify any fundamental rights infringed by the Ordinance. As the Court previously explained, "[i]n areas of social and economic policy," like alcohol regulations, "a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge if there is *any reasonably conceivable state of facts* that could provide a rational basis for the classification." Docket No. 18, pg. 8 (emphasis added) (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)); *see also Broadwell v. Municipality of San Juan*, 312 F. Supp. 2d 132, 138–39 (D.P.R. 2004). Absent any apparent or

---

that they have standing to raise this argument. Second, the Ordinance imposes no such restriction targeting Puerto Ricans. Any Puerto Rican resident can rent a hotel room to, as a guest, enjoy that hotel's bars and restaurants. Third, Plaintiffs advance that the guests-only rule is not enforced in practice, clarifying that Puerto Ricans have suffered no injury in fact. *See* Docket No. 27, pgs. 3–4.

| ASOCIACIÓN DE EMPRESARIOS CALLE LOÍZA, INC. ET AL. V. MUNICIPALITY OF SAN JUAN | Page 14 |
|---|---|

proffered reason to apply heightened scrutiny, the Court applies rational basis review here. *See Broadwell*, 312 F. Supp. 2d at 139 (applying rational basis review to a location-based, nighttime alcohol sales ordinance). Plaintiffs' task, then, is to demonstrate that Article 2.101's categorizations lack any rational relation to a legitimate government interest. *See Beach Commc'ns, Inc.*, 508 U.S. at 313–15 (first quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973), then citing *Hodel v. Indiana*, 452 U.S. 314, 331–332 (1981)) (explaining that those challenging rationality of a law or its classifications bear the burden of negating all conceivable rational bases for them).

Plaintiffs fail to meet that burden. It is uncontested that Defendant has legitimate interests in ensuring safety, tranquility, quality of life, and public order in San Juan. The Twenty-First Amendment, coupled with state police powers to regulate for public health, welfare, and morals, affords local governments "almost unfettered discretion" to advance those interests through alcohol sale and distribution regulations. *Broadwell*, 312 F. Supp. 2d at 138–39 (collecting cases). Defendant determined that late-night alcohol sales, and the

nighttime activity thereby generated, threaten those interests. *See* Docket No. 10-1, pgs. 8, 10. Accordingly, it broadly, though not completely, restricted late-night alcohol sales.

Taking as true Plaintiffs' allegations that the Municipality's chosen intervention does not meaningfully reduce overall crime and that enforcement is spotty, Plaintiffs have not demonstrated that Article 2.101's restrictions lack a rational relation to legitimate safety and noise-reduction ends. *See* Docket No. 1, paras. 32–33, 38. There is a "logical correlation" between late-night alcohol sales, crime, and noise. *See Broadwell*, 312 F. Supp. 2d at 140–41. Limiting the hours alcohol can be sold and reducing the number of places selling it conceivably curtails social ills like crime and noise. Plaintiffs' allegation that one study predicts otherwise does not render Article 2.101 irrational. *See* Docket No. 1, para. 32. "[A] legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns, Inc.*, 508 U.S. at 315. Likewise, the Court does not second guess the Municipality's judgment that Article 2.101's benefits outweigh that of foregone tax revenue. "[E]qual protection is not a license for courts to judge the

wisdom, fairness, or logic of legislative choices." *Id.* at 313. Whether better or alternative means exist for tackling social ills is a question reserved to the democratic process, not courts.

The carveout for hotel restaurants and bars does not destroy this rational relationship. "[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, 489 (1955) (citing *Semler v. Oregon State Board of Dental Examiners*, 294 U.S. 608, 611 (1935)). Defendant's attempt to mitigate, rather than eliminate, perceived ills associated with all-night alcohol service is rational. And even if, as Plaintiffs claim, hotels serve some non-guests with impunity, the Municipality could have reasonably determined that other interests outweigh any resulting safety or noise risks. Amongst those considerations could have been allocation of law enforcement resources, presence of private security inside hotels, and tourists' needs for refreshment following midnight arrivals. In sum, Plaintiffs have not shown there is no rational relationship between Article 2.101's prohibitions and the Municipality's legitimate

crime and noise-reduction goals. No equal protection claim lies.

## IV. Conclusion

For the reasons above, Plaintiffs have failed to state a substantive due process or equal protection claim. The Court therefore **GRANTS** the Motion at Docket No. 10 and **DISMISSES** the Complaint without prejudice.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of July 2024.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE